RECEIVED

1   Fredrika M. Miller – Gary L Sauer - Pro Se
2   100 Commerce St Apt A Jackson Al 36545
    702 601 3681                                              DEC 1 7 2020
3   bootsmylove69@gmail.com

4              **UNITED STATES DISTRICT COURT**                    CLERK
                                                           U.S. DISTRICT COURT
5                                                          MIDDLE DIST. OF ALA.
              **FOR THE MIDDLE DISTRICT OF ALABAMA**
6

7   FREDRIKA M MILLER, GARY L SAUER        | Case No.:
8              Plaintiffs,                 |
9   vs.                                    | CIVIL ACTION     2:20-cv-01049-MHT-SRW
10  CITY AND COUNTY OF MONTGOMERY,         |
    ALABAMA,                               |
11             Defendants                  |
12
13              The Plaintiff in the body of this complaint refers to Fredrika M Miller specifically.

14  Gary L Sauer is Plaintiff in suit action only and as witness to actions where his name is specified.

15  The Plaintiff maintains that the Defendant(s) have consistently worked in organized fashion to

16  discredit, manipulate, undermine and throw out every complaint or report the Plaintiff has ever

17  tried to file. The Defendant(s) have shown absolutely no reason or given any evidence to explain

18  their behavior. When the Plaintiff asks for clarity, documents or proof, the Defendant(s) refuse
19
20  any and all evidence explaining their behavior. The Plaintiff has called upon all agencies of

21  Defendant(s) including but not limited to civil, criminal and administrative branches for an

22  explanation for their inaction. The Defendant(s) display innuendos, make jokes and skirt around
23
24  any issues the Plaintiff is requesting assistance with, information on or protection from. The

    Defendant(s) agencies laugh at the Plaintiff, play word games, attempt to have the Plaintiff and
25
26  her mother tested for mental illness as well as having them arrested and taken to mental health

27  facilities against their will, without ANY due course of law. The Defendant(s) failed to act on

28  dozens of occasions when the Plaintiff and her mother where in fear for their lives, being
    CIVIL ACTION - 1

threatened with physical violence by Will Von Gal through the help of his lawyer Thomas

Gallion. The Plaintiff reported in 2013 that she was raped by Montgomery Police Department

officer, Michael McCord. Bill Barousse at City Investigations claimed he had called the Plaintiff

to tell her that the FBI had investigated the matter in a joint investigation and that no charges

would be filed as her claim was 'unfounded.' However the Plaintiff has never been asked a

single question and she was told that Internal Affairs was handling the case, a case that never

existed to her knowledge. Her claim of rape as well as her claim of her house being maliciously

and deliberately poisoned by landscaper Michael Stroup causing the subsequent cryptogenic

liver cirrhosis, and death of her mother Ozell Miller was never taken seriously. Michael Stroup

told the Plaintiff that her mother would 'surely die' in the house after he used an undetermined

amount and type of pesticides illegally on the Plaintiff's property at 3156 Cloverdale Rd.

Montgomery, Alabama 36106. The Plaintiff has also reported numerous complaints to the City

of Montgomery, Montgomery County, the Montgomery Police Department, Alabama Law

Enforcement Agency, the Mayor's office, the Governor's office, the Attorney General's office,

the Probate court, the Alabama Bureau of Investigation, the Sheriff's Office, Homeland Security,

the Bureau of Alcohol Tobacco and Firearms, the Alabama Department of Senior Services, the

State of Alabama Department of Agricultural and Industries, the Legal Services Office on

Domestic Violence Project, Adult Protective Services, and the Montgomery County District

Attorney's office. The Plaintiff has also spoken directly with Clarence Pugh with the

Montgomery Area Mental Health Authority who tried to have the Plaintiff's mother committed

against her will without any legal proceedings. The Plaintiff and her mother Ozell Miller also

spoke with Patrick Roberts former Assistant Attorney General of Alabama, in his office, who

promised to help but told his office after they left to, "Never allow the Plaintiff to call or come

CIVIL ACTION - 2

back on the premises again." He gave no reason and only claimed it was a personal decision without merit. He had Bill Summers, special agent, sit in on the meeting while the Plaintiff told them about Will von Gal and the threats against the Plaintiff and her mother. Mr. Summers reply to the meeting was to laugh, scoff and say that "He might also be a psychopath," speaking about himself. The Plaintiff also spoke to Joy Patterson, Leslie Worrell and Allegra Smith who would consistently hang up on the Plaintiff and informed her staff to do the same. The Plaintiff also spoke with the Alabama Insurance Commissioner, Jim L. Ridling. He told the Plaintiff that Allstate, Arthur J Gallagher/Whitehaven Insurance did nothing wrong. He came to this conclusion without reviewing a single word of the complaints filed by the Plaintiff. The Plaintiff also called the Alabama Ethics Commission and spoke with James L. Sumner and he refused to help and was audibly shaken when the Plaintiff mentioned Will von Gal, Tommy Gallion and specifically Buddy Mitchell's names. Mr. Sumner immediately told the Plaintiff that "This conversation never happened," and hung up on the Plaintiff. The Plaintiff also contacted the One Place Justice Center who offered a promise of assistance but the help was immediately rescinded when the names Will von Gal and Tommy Gallion were mentioned. The Plaintiff also contacted the Sunshine Center and was promised help until the name Will von Gal and Tommy Gallion were mentioned. A case manager Jacqueline, called the Plaintiff and told her that Assistant District Attorney Daryl Bailey wanted to set up dinner with him to discuss things "In private." The Plaintiff refused his advances.

The Plaintiff was contacted by Mayor Todd Strange to have a private dinner meeting with him as well at the Eastside Grille in 2012. The Plaintiff refused. Montgomery County Commissioner Dimitri Polizos tried to get the Plaintiff to have a private dinner meeting with his father Gus Polizos on Valentines Day 2012. The Plaintiff refused that meeting also and was told by a family

CIVIL ACTION - 3

friend that Dotty Polizos and Jolene Gogan (Comeau) liked to "order hits" on people and that they liked it. The Plaintiff took this as a direct threat by the Commissioner and his family. Throughout the twenty plus years starting in the late 1990's the Plaintiff and her mother Ozell Miller made dozens of attempts to get help from authorities of the City of Montgomery, Alabama but were never offered any help. The Plaintiff was consistently passed off, transferred, laughed at and treated unprofessionally whenever she tried to get assistance with any agency connected with the city, county or state. The Plaintiff sought the direction and retained several attorneys in attempts to get help from these same agencies but ultimately was taken advantage of, dragged through the system and told to never try to get help from the city, county and state in Montgomery, Alabama. The Plaintiff and her mother were told by attorneys there was a deliberate campaign to directly affect the outcome of any legal proceedings. The attorneys also explained there was a 'red flag' on their names with the City and County of Montgomery, Alabama. The Plaintiff was also told specifically by a local man Keith Wideman as well as an 'unknown caller' that she would never again win a circuit court case in Alabama. The Plaintiff has asked repeatedly for the agents of the City of Montgomery, the County of Montgomery and the State of Alabama to open an investigation into the poisoning of her mother Ozell Miller. The Plaintiff made numerous phone calls while in Alabama.

The Plaintiff made phone calls from her mother's hospital room in California at UCLA Medical Center as well as Cedar Sinai requesting the agents of the MPD, ALEA and the FBI come take a statement. Agents for the Defendant(s) refused every single time. The Defendants always acted unprofessionally, made promises to help or 'look in to it' and 'follow up' but they never did. The Plaintiff waited by the phone for over a week because an officer at MPD told her he would 'get to the bottom' of why the Defendant(s) would not file a report for the Plaintiff. The Defendant(s)

CIVIL ACTION - 4

would refuse to talk with the Plaintiff and her mother every single time after any initial contact made by the Plaintiff, giving no explanation or alternate resource to file charges or claims.

After the Plaintiff's mother Ozell Miller passed away from cryptogenic cirrhosis of the liver induced by chemicals (see death certificate and autopsy report) the Plaintiff came back to Alabama and found her 3156 Cloverdale Montgomery, Alabama home boarded up. The Plaintiff then found a condemned notice affixed to the front door by the City of Montgomery, signed by James McConnell. Upon inspection of the premises the Plaintiff found the interior completely destroyed and all of their belongings stolen and/or destroyed. The Plaintiff's mother's car was also gone from the property and witnesses who lived nearby explained that the house was being used as a Meth lab. The neighbors called the MPD, agents of the City and County of Montgomery. When the MPD arrived at the address they spoke with the suspects while they were loading a truck with items they were stealing from the home. The suspects, Thomas Ryan and James Richard Hanson were never apprehended or charged and were allowed to continue burglarizing the premises with the full knowledge of the MPD's agents on scene. One witness, Kathryn Mellini presented the MPD's agents with video evidence as well as the names of the people burglarizing the Plaintiff's house but the agents of the City and County of Montgomery, Montgomery Police Department claimed that nothing could be done to stop the criminals because the owners of the residence were not present nor were they reporting the crime so no action could be taken. Upon hearing the refusal of the MPD to file a report or stop the burglary, the Plaintiff again called the MPD and reported the crime. The MPD sent one officer to take a statement and file a report. The officer refused to write it claiming it was too long of a report and that the Plaintiff would have to go to the MPD's address at 2190 E. South Blvd Montgomery, Alabama to file the report in person. The Plaintiff filed the report numbered #2018-00249505.

CIVIL ACTION - 5

This report has never been followed up on or resolved. No one was ever questioned or arrested. The Plaintiff then reported to the MPD at 301 N. Ripley to again file a stolen car report for her deceased father's Triumph TR7. But the officers told the Plaintiff they could not file the report because they would not want to jeopardize an officer's life by pulling over the car if it ever was found on the street operating. The Plaintiff and her witness Gary Sauer asked what the agents of the Defendant(s) meant by that cryptic statement. The MPD officer refused to answer at the request of a third supervising officer that showed up on scene. The supervisor explained that the Plaintiff would have to take it up with the detectives next door to the station. He said the Plaintiff could only show up on a Monday after 10 am when the detectives were 'in a good mood.' The Plaintiff had already spoken with the detectives at their 301 N. Ripley facility and Sgt. Capps said they could not help because they are in property crimes. This statement did not make any sense because the Plaintiff was reporting a property crime, personal property. The Plaintiff tried to report the auto theft several years earlier in 2014 when it was stolen out of a storage unit at Smart Shop Storage at 6010 Monticello Dr. Montgomery, Alabama 36117. When the Plaintiff tried to report the crime originally at the storage facility in 2014, two officers arrived to process the scene. One was named Officer Mayfield. Upon further intensive questioning by the two officers they were made aware by the Plaintiff's mother that the Plaintiff was raped by an MPD officer. The two officers stopped processing the scene and called in a supervisor who showed up moments later. The supervisor told the officers to leave and then refused to file a report offering no explanation and abruptly left the premises after he found out the officers name who committed the rape, Officer Michael McCord. The same scenario happens nearly every time a male MPD officer finds out about the rape incident from the Plaintiff.

CIVIL ACTION - 6

The Plaintiff then went to the Probate courts office to find out the disposition of her and her mother's property at 3156 Cloverdale Rd. The Plaintiff was referred to the Montgomery County Revenue Commissioner's office where the Plaintiff was told that the tax exempt status had been removed from the premises and that the property was sold for non-payment of taxes while the Plaintiff and her mother were in California for two years receiving medical treatment. The Plaintiff was in contact with the city and county offices, the FBI, the MPD, ALEA and other individuals employed by the city, county and state like AG Steve Marshall's office and Probate Court Judge Steve Reed.  The Plaintiff was concerned about the disposition of her property as well as trying to get justice for her mother's poisoning at the hands of Michael Stroup. No official told the Plaintiff a single word about her property being in jeopardy and that no taxes were owed only some lawn cutting fees. Not one of the agents of the Defendant(s) ever tried to start an investigation into the burglary, theft of property, death threats by Will von Gal, poisoning of her property, herself and mother Ozell, rape by Officer Mike McCord or subsequent loss of her house and the contents therein. The Defendant(s) were given every opportunity to answer charges, questions, file reports and explain their actions however not a single one of them ever treated the Plaintiff like a citizen of Montgomery should be treated. The Plaintiff and her witness to the Defendant(s) recent actions, Gary Sauer, have written countless requests for meetings with every agent of the Defendant(s) listed in this complaint. The Plaintiff has written numerous testimonies, letters, queries, informational and detailed timelines of all of the Plaintiff's encounters with every agent of the Defendant(s) and has only received one reply. City Investigations granted a request for one meeting in the Spring of 2020 the day before the lockdown started in the Covid pandemic. The Plaintiff was hundreds of miles away at the time and tried to reschedule an in person appointment for the following Monday however the request

was denied by the Defendant(s) City Investigations Office because no face to face contact was being allowed the two short days later when the Plaintiff could get back into Montgomery. The agents for the Defendant(s) City Investigations also explained any meeting could only address administrative issues and no 'criminal' actions could be discussed. The agent for the Defendant(s) City Investigations offered a phone interview only and the Plaintiff explained that she would need to meet in person as she has countless pieces of evidence to share while discussing numerous problems she had encountered. City Investigations sent a small letter to the 3156 Cloverdale address explaining that they had 'closed the case' because the Plaintiff didn't show up for the intended meeting and that they considered the matter handled. The agent for the Defendant(s) knew the Plaintiff was not residing at the address and that she was staying hundreds of miles away, due to safety concerns and death threats she was receiving from Will von Gal. She did not have access to her mail since the mailbox was also removed from the premises. It wasn't until a month or more later that the Plaintiff put up a new secure locked mailbox at the property and had the USPS start sending mail to that address again that the letter was finally received.  However by this time it was too late.

 While on the West coast the Plaintiff tried to report the behavior of the Defendant(s), the City and County of Montgomery and its agents to authorities there. The Plaintiff also tried to report crimes there that had transpired over the past decade that the Defendant(s) had systematically refused to take reports on while the Plaintiff was in Alabama. While visiting Gary Sauer in Nevada, the Las Vegas Metro Police Department wrote two separate courtesy complaints for the Plaintiff. The first one charging Officer Michael McCord of the MPD with rape and complaining that the Defendant(s) refused to hear her complaints or file any reports. While there the Plaintiff also visited the offices of the FBI in Las Vegas to report the crimes committed against her and

CIVIL ACTION - 8

her mother as she could not get any help from any agency while in Alabama. The FBI in Las

Vegas told the Plaintiff that her problem is with Alabama and to secure a lawyer to handle it but

the Plaintiff had no ability to hire a lawyer at that time nor was she in a position to travel back to

Alabama with her mother Ozell Miller still in the middle of intensive treatments in Los Angeles.

The second time the Plaintiff was in Nevada she filed the second report number

#LLV200100031928 charging Michael Stroup with poisoning her and her mother Ozell and had

the LVMPD send the report to Alabama. This time it was much more difficult to get the LVMPD

to cooperate and take the report claiming it was solely the responsibility of Alabama and that the

Defendant(s) should be doing their job. The LVMPD took her report seriously, a behavior the

Plaintiff was not at all used to. The Plaintiff has come to the conclusion that the Defendant(s) are

directly working against her motivated by an unknown reason. The Plaintiff has asked the

Defendant(s) on multiple occasions why she is refused the same service she gets in other states

and the general population of Alabama gets normally as citizens. The Plaintiff has requested

records, information, reports and data from all agencies of the Defendant's and is met with direct

and deliberate stonewalling. The Plaintiff is refused any documents that are available to the

general public and is treated with callousness and negative replies.

When the Plaintiff went to meet with the detectives at the Montgomery Police Department to

file the report with property crimes and to try yet again to file her rape report with the

Defendant(s) judicial system Officer Capps told her specifically she was "Unfounded". This

statement was made in front of the witness Gary Sauer as well. Both the Plaintiff and witness Mr.

Sauer asked how that could be and Sgt. Capps said he could not tell them, that they should just

understand that a joint investigation had been completed by the MPD with the FBI and that they

could find no reason to file any charges against a fine upstanding retired officer with the

CIVIL ACTION - 9

Defendant(s) agency. He also stated that since it was an internal affairs investigation that the Plaintiff was not allowed to have access to any of the investigatory data. Sgt. Capps then made a cryptic claim that there was some kind of underlying issue that they were aware of, the Plaintiff was aware of and that they didn't want to speak about it in a public setting. Sgt. Capps refused to explain himself in front of the witness Gary Sauer while in the lobby of the Montgomery Police Department and refused to allow the Plaintiff or her witness Gary Sauer access to any files or an explanation or proof of what the detective was talking about. The Plaintiff then asked how they could do an investigation when no agent of the Defendant(s) of any kind contacted the Plaintiff for an interview or evidence. The Plaintiff was never asked a single question related to her rape by Officer McCord even though the Plaintiff has overwhelming evidence of the rape. The Plaintiff has been trying to report the rape since 2013. The Montgomery Police Department, agent for the Defendant(s) has refused to file any public report thus making it impossible for the Plaintiff to plead her case in open court and forcing any restrictions to reporting the manner past any Statute of Limitations that exist in Alabama. Until the crime is taken seriously it is submitted here that the crime has not yet been legally challenged by the Defendant(s) and the Plaintiff still has the legal right to be heard in open court.

As for the matter of the poisoning of the Plaintiff and her mother Ozell Miller on their property at 3156 Cloverdale Rd Montgomery, Alabama 36106 by Michael Stroup it too has yet to have its day in court. The Plaintiff has witnesses, documentation, autopsy and medical reports from California as well as personal physicians here in the State of Alabama. No police report has ever been written, investigated or challenged by the Defendant(s) or any of its agents. The Plaintiff has never been allowed to effectively enter into exhibit any evidence collected by her over the course of the past 11 years since the poisoning on September 17-18, 2009. No witnesses have

CIVIL ACTION - 10

been called, no investigation started and no report filed. No case number has ever been entered into any log with the Defendant(s) or any of its agencies. The Plaintiff has been treated as if anything she tries to report is false and with prejudice the Defendant(s) agents refuse to even hear her claims or document them legally. The Plaintiff's basic civil rights have been stripped away and her ability to report even an auto theft or trespassing crime to the MPD has been forever removed. While in California with her mother the Plaintiff called the Defendant(s) on numerous occasions asking for a statement to be taken in regards to the poisoning in Alabama. One officer with ALEA took one call seriously when the call was made by Gary Sauer, the Plaintiff's witness. As Mr. Sauer described the situation to the officer over the phone from Ozell Miller's ICU room at UCLA the officer asked if Will von Gal had paid Michael Stroup to poison the Plaintiff and her mother. When Mr. Sauer tried to explain further the officer abruptly hung up the phone claiming there was an emergency in the precinct and that he would get back to Mr. Sauer after a while or the next day. He never returned any phone calls even with numerous messages being left at the station. At another time officer Sgt. Capps seemed concerned that the Plaintiff had received no support from the Defendant(s) and said he would call back within a few days telling her to 'Wait by the phone, don't worry everything is going to be ok after speaking with his office and supervisors' as noted earlier in this complaint. After waiting by the phone for a week the Plaintiff tried to call the number back several times leaving messages for the officer from California. Within a day or two of trying to return the calls to the officer or to get someone from that office on the phone, the number stopped working. It was acting like a blocked number. Neither the Plaintiff's phone or Mr. Sauer's phone was able to complete a call to the number given to them by the officer himself. The Plaintiff then tried calling other numbers at the station and they went through fine. Then the Plaintiff and Mr. Sauer went to a phone booth and tried to

CIVIL ACTION - 11

call the number, it went through and the Plaintiff again left a message that was not returned. This pattern repeated itself even after returning to Alabama in February and throughout 2020. The Plaintiff and Gary Sauer have gone to great lengths to gain access to police reports, documentation, lists, phone records, FBI records, insurance records, hospital records and tax records. The Plaintiff has asked daily for help from nearly every single agent of the Defendant's since returning to Alabama after her mother Ozell Miller's death on December, 25th. 2019.

   Now a sense of extreme urgency is prevalent as the anniversary of Ozell's passing is approaching and the Plaintiff's legal options to file wrongful death lawsuits diminishes without the Defendant's direct assistance in extending those parameters. The Plaintiff is unsure the Defendant(s) will act appropriately in this matter and a date that is approaching will pass and the Plaintiff will have received the same lack of treatment the Defendant(s) have exhibited over the past two decades.  So this complaint comes before the United States District Court for the Middle District of Alabama stating that the Plaintiff's constitutional rights to protection have been violated by the City and County of Montgomery, Alabama. The Plaintiff has been denied her right to a fair trial and has been denied her rights within the Violence Against Woman Act of 1994 (18 U.S.C. § 2261(a)(1) and (2)).

CIVIL ACTION - 12

## COUNT 1. -  DERELICTION OF DUTY CAUSING DEATH

**Ninth Amendment violation.** Defendant(s) and its agents refused to perform their duties on numerous occasions leaving the Plaintiff and her mother in danger of threat for her life and bodily harm causing her death.

## COUNT 2  -  FAILURE TO PROTECT PLAINTIFF'S CONSTITUTIONAL RIGHTS

**Thirteenth Amendment violation.** Defendants refused to protect the Plaintiff and her mother against violations by Will von Gal of her civil rights by city, county and state departments. Forcing the Plaintiff across state lines and causing severe permanent physical, emotional damage and death violating the Violence Against Women Act of 1994 (18 U.S.C. § 2261(a)(1) and (2)).

## COUNT 3 - FAILURE TO PROTECT PLAINTIFF'S CONSTITUTIONAL RIGHTS

**Fourth Amendment violation.** Defendants did unlawfully remove the Plaintiff's mother from her home at 3156 Cloverdale Rd. Montgomery, Alabama and brought to Jackson Hospital with an intention to commit her to the State Mental Institution at Tuscaloosa without a fair trial. The Defendants intended to speed the induction process in order to detain her before she had her court appearance.

## COUNT 4 - FAILURE TO UPHOLD CONSTITUTIONAL RIGHTS

**Fifth Amendment violation.** The Defendants did not give the Plaintiff a speedy and public trial. The Defendants did not give the Plaintiff the right to be heard, evidence, reports, documents or files explaining reasons for refusal to assist and allow the Plaintiff with her pursuit of lawful justice.

## COUNT 5 – FAILURE TO PROTECT THE RIGHT TO PETITION THE GOVERNMENT

**First Amendment violation.** The Defendant(s) have denied the Plaintiff's right to petition government for redress of grievances and the right to make a complaint to, or seek the assistance of, one's government, without fear of punishment or reprisals.

## COUNT 6 – FAILURE TO PROVIDE EQUAL PROTECTION UNDER THE LAW

**Fourteenth Amendment violation** Plaintiff and her mother Ozell Miller are Muskogee American Indians and were denied equal protection under the law to protect their civil rights. The Plaintiff asked for the Defendant(s) and its agents to protect her against threats of bodily harm, death threats and intentional infliction of emotional

CIVIL ACTION - 13

1  distress.

2  ## COUNT 7 – FAILURE TO PROVIDE EQUAL PROTECTION UNDER THE LAW

3
4    **Fourteenth Amendment violation** Plaintiff has clinically diagnosed Complex Post
   Traumatic Stress Disorder and was denied equal protection under the law to protect her
5  civil rights. The Plaintiff asked for the Defendant(s) and its agents to protect her against
6  threats of bodily harm, death threats and intentional infliction of emotional distress.

7  ## COUNT 8 – FAILURE TO PROVIDE PROTECTION TO A DISABLED PERSON

8
9    **Fourteenth Amendment violation.** Plaintiff has clinically diagnosed Complex Post
   Traumatic Stress Disorder and was denied equal protection under the law to protect her
10  civil rights under the Equal Protection Clause. The Defendant(s) and their agents denied
11  the Plaintiff fair housing and living conditions free from threat of bodily harm and death
   when called upon to remedy illegal acts committed on and around their property at
12  3156 Cloverdale Rd Montgomery, Alabama. 36106 address.  Americans with Disabilities
13  Act of 1990 or ADA (42 U.S.C. § 12101).

14  ## DAMAGES

15
16   $18,000,000 +legal and medical expenses from 2003 to present. Return Plaintiffs
   property to her at 3156 Cloverdale Rd that was sold illegally in a tax sale and return it to
17  tax exempt status. Return the Plaintiffs property at Beachcomber #106 105 E 4th St Gulf
   Shores Alabama and return both properties to their original living condition.
18
19       Dated this 16ᵗʰ of December, 2020.
20                              *Fredrika M. Miller*
                                Fredrika M Miller    –    /Gary L. Sauer / Pro Se
21
22
23
24
25
26
27
28
   CIVIL ACTION - 14

Fredreka Miller/Gary Sauer
100 Commerce St    APT A
Jackson   Alabama 36545


USCD Clerk of The Court
ONE Church ST  Room B-110
Montgomery  Alabama 36104

FROM: MILLER ISAUER
100 Commerce St. Unit A
JACKSONI AL
                36545


                TO:
USDC  CLERK OF COURT
ROOM B-110
one CHURCH St.
     MONTg, al.
             36104